IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEY DONSKOY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>　　　　Defendant. | Case No. 21-cv-04757-CRB<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Pro se Plaintiff Sergey Donskoy, a Russian citizen, petitioned Defendant United States Citizenship and Immigration Services (USCIS) to classify him as an "alien of extraordinary ability" and thereby grant him an "employment-based first-preference" immigrant visa, also known as an EB-1. See generally Compl. (dkt. 1). USCIS denied Donskoy's petition, and Donskoy brought suit challenging that decision under the Administrative Procedures Act (APA). Id. Donskoy filed a motion for partial summary judgment, P. Mot. (dkt. 21),[1] and USCIS filed its own motion for summary judgment in response,[2] Gov. Mot. (dkt. 22); see also P. Reply; Gov.

---

[1] Donskoy fashions his motion as one for partial summary judgment, and explicitly states that he is not seeking judgment on his "claim that the agency Decision shows the signs of epistemic injustice." Id. at 1; but see Compl. (not identifying separate claims). Nonetheless, Donskoy's motion essentially argues his entire case: that USCIS erred in denying his petition, and that the Court should declare that he is qualified for the "extraordinary ability" category visa and award him fees and costs. Id. at 2. Notably, though Donskoy asserts that one of the issues in his motion is whether USCIS acted "in good faith," see P. Mot. at 4, he argues only briefly that "[a] public agency cannot act in any 'faith' upon providing a public service outside a private contract," id. at 16. The Court is not persuaded that USCIS acted in bad faith here.

[2] Donskoy argues in his reply brief that USCIS "does not clearly state whether [its motion] is opposing all or certain claims of the Plaintiff's complaint" and concludes that "Defendant is opposing the MPSJ only in part." P. Reply (dkt. 26). Not so. The USCIS motion asks the Court to "deny Plaintiff's motion for partial summary judgment and grant summary judgment in favor of Defendant, dismissing Plaintiff's complaint with prejudice." Gov. Mot. at 16. The USCIS motion thus challenges Plaintiff's case in its entirety.

Reply (dkt. 27). This Court finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b), and VACATES the hearing currently set for November 18, 2021. As explained below, because Donskoy has not demonstrated that USCIS's decision to deny his petition violated the APA, the Court DENIES Donskoy's motion and GRANTS USCIS's motion.

## I.   BACKGROUND

### A.   Extraordinary Ability Visas

In 1990, Congress created a new employment-based immigration preference for aliens of "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation," who "seek[] to enter the United States to continue to work in the area of extraordinary ability," and whose "entry into the United States will substantially benefit prospectively the United States." 8 U.S.C. § 1153(b)(1)(A). The "Aliens with extraordinary ability" category, along with "Outstanding professors and researchers" and "Certain multinational executives and managers," is referred to as an employment-based first-preference immigrant visa, or an EB-1 visa, because it is classified under the first heading of the employment-based section of the INA: 8 U.S.C. § 1153(b)(1). The EB-1 category is the highest priority, does not require an actual job offer for employment within the United States, and "is exempt from the time-consuming labor certification process, which requires that employers first test the marketplace for existing qualified domestic workers." Kazarian v. USCIS, 596 F.3d 1115, 1120 (9th Cir. 2010).

Section 1153 does not define "extraordinary ability," but the applicable regulations provide that "[e]xtraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). The regulations require that a petition for an alien of extraordinary ability "be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." Id. § 204.5(h)(3). There are two ways for a petitioner to demonstrate extraordinary ability. See Kazarian, 596 F.3d at 1119. The

first is to submit "evidence of a one-time achievement" like a Nobel prize. Id. (citing 8 C.F.R. 204.5(h)(3)). The second is to provide evidence of at least three of the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

Id. (citing 8 C.F.R. 204.5(h)(3)). If those criteria "do not readily apply to the beneficiary's occupation," he "may submit comparable evidence" of eligibility. Id. § 204.5(h)(4).

USCIS analyzes an alien's petition for an extraordinary ability visa using a two-step process. See Noroozi v. Napolitano, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012) (noting that USCIS "put in place a new, two-step approach to the adjudicative process" in response to Kazarian). First, USCIS determines whether the petitioner has met his evidentiary burden. Rijal

v. USCIS, 772 F. Supp. 2d 1339, 1343 (W.D. Wash. 2011). Second, if the petitioner has done so, "USCIS must then consider whether the evidence demonstrates extraordinary ability." Id. (citing Kazarian, 596 F.3d at 1119–20).

At the second step, USCIS is to evaluate "all of the evidence together when considering the petition in its entirety . . . in the context of the high level of expertise required for this immigrant classification." USCIS Policy Manual, Vol. 6, Part F, Chapter 2.B.2 (Manual), available at https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 ("Two-Step Analysis of Evidence"), last viewed 10/26/2021. USCIS determines whether the petitioner has demonstrated "sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise, indicating that the person is one of that small percentage who has risen to the very top of the field of endeavor." Id. (emphasis added); 8 C.F.R. § 204.5(h)(2)–(3). "A reviewing officer may determine that a petitioner has satisfied three of the 204.5(h)(3) criteria, yet may nonetheless determine that the petitioner failed the final merits determination and thus does not qualify." Noroozi, 905 F. Supp. 2d at 539; Manual ("objectively meeting the regulatory criteria in the first step alone does not establish that the person in fact meets the requirements for classification as a person with extraordinary ability.").[3]

The standard for an extraordinary ability immigrant visa is "extremely restrictive." Kazarian, 596 F.3d at 1120 (citing Lee v. Ziglar, 237 F. Supp. 2d 914, 918 (N.D. Ill. 2002)).

### B. Mr. Donskoy

Donskoy is a native and citizen of Russia. AR (dkt. 17-1) at 118. In August 2020,[4] Donskoy filed USCIS Form I-140, seeking classification as an alien of extraordinary ability. Compl. ¶ 7; AR at 117–25. His petition was based on his ability as an executive director in the field of business, and included evidence of his work history, educational background, publications,

---

[3] Donskoy's suggestion that one who meets the 8 C.F.R. § 204.1(h)(3) criteria, "[i]n the absence of negative factors . . . is entitled for the relief," see P. Mot. at 16, is incorrect, as it would eliminate the second step entirely. See Bodhankar v. United States Citizenship & Immigr. Servs., No. 1:19-CV-706 (MAD/CFH), 2020 WL 777211, at *5 (N.D.N.Y. Feb. 18, 2020) (rejecting same argument).

[4] Donskoy asserts that this took place on August 8, 2020, see Compl. ¶ 7, while USCIS asserts that it took place on August 12, 2020, see Gov. Mot. at 7 (citing AR at 117–25). The precise date does not matter.

4

and receipt of a Fulbright award. AR at 117–253. On November 22, 2020, Donskoy submitted as additional evidence a certified copy of one of his publications. AR at 91–116. On March 30, 2021, USCIS issued a request for evidence (RFE) seeking more documentation, AR at 6–11, and in April 2021,[5] Donskoy filed a response with additional evidence, AR at 12–90.

On May 17, 2021, USCIS issued a Decision denying Donskoy's I-140 Petition. See AR at 1–5. It concluded that Donskoy had "not established eligibility for the benefit sought." Id. at 4–5. Donskoy brought suit in this Court on June 22, 2021, arguing that the Decision violated the APA. Compl. Donskoy has now filed a motion for partial summary judgment, P. Mot., and USCIS has filed its own motion for summary judgment, Gov. Mot.

## II.  LEGAL STANDARD

The APA permits courts to review final agency actions. See 5 U.S.C. §§ 702 and 704. A court may hold unlawful and set aside agency action only when such action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This is a narrow scope of review. Bowman Trans., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). To determine whether agency action was an abuse of discretion, a court must decide "if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." Kazarian, 596 F.3d at 1118. To determine whether agency action was arbitrary and capricious, a court "must decide whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" National Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003) (quoting Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, 462 U.S. 87 (1983)). An agency decision is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

---

[5] Donskoy asserts that this took place on April 26, 2021, see Compl. ¶ 7, while USCIS asserts that it took place on April 19, 2021, see Gov. Mot. at 8 (citing AR 12–90). Again, the precise date does not matter.

5

expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). A court cannot substitute its judgment for the agency's. National Ass'n of Home Builders, 340 F.3d at 841.[6] Moreover, a court "may not supply a reasoned basis for the agency's action that the agency itself has not given," but it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman, 419 U.S. at 285.

"Where . . . a party seeks review of agency action under the APA and 'the entire case on review is a question of law,' summary judgment is generally appropriate." Noroozi, 905 F. Supp. 2d at 541 (citing Citizens Against Casino Gambling v. Hogen, No. 07–CV–0451 S, 2008 WL 2746566, at *25 (W.D.N.Y. July 8, 2008)); see also City & County of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997) ("summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did") (internal quotation marks omitted)). The Court's "review of an agency decision is based on the administrative record and the basis for the agency's decision must come from the record." National Ass'n of Home Builders, 340 F.3d at 841 (citing Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv., 273 F.3d 1229, 1236 (9th Cir. 2001)).

### III.   DISCUSSION

USCIS denied Donskoy's petition for classification as an alien of extraordinary ability in the field of business. See generally Compl. USCIS based its Decision on 8 U.S.C. § 1153(B)(1)(A) and 8 C.F.R. § 204.5(h), and engaged in the two-step process described in the case law and the USCIS manual. AR 1–2; Noroozi, 905 F. Supp. 2d at 539; Manual.

USCIS found that Donskoy had met his burden at step one by establishing three of the categories set forth in 8 C.F.C § 204.5(h)(3). See AR at 3 (citing 8 C.F.R. § 204.5(h)(3)(i), (v), (vi)). Specifically, USCIS determined that Donskoy had established that he was the "recipient of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor," made "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field," and authored "scholarly articles in the field, in professional or

---

[6] The Court rejects Donskoy's assertion that it may, in this circumstance, "substitute (supply) [its] own judgment (reasoned basis) with the agency's erroneous judgment." P. Reply at 7.

major trade publications or other major media." Id.  USCIS noted that, though Donskoy submitted evidence as to a fourth category, "membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields," he failed to establish that category. Id.  USCIS explained that membership in the Fulbright Association is not limited to Fulbright award winners, and there was no evidence that the association "require[d] outstanding achievement of [its] members." Id.  Donskoy's failure to establish this last category was of no legal significance, however, as USCIS held that he had established three others.  See 8 C.F.R. 204.5(h) ("Such evidence shall include evidence of . . . at least three of the following").  Donskoy does not challenge USCIS's Decision at step one.  P. Mot. at 5.

Where USCIS determined that Donskoy fell short was at step two.  AR at 3–5.  At step two, USCIS evaluates "all of the evidence together when considering the petition in its entirety . . . in the context of the high level of expertise required for this immigrant classification."  Manual; AR at 3–5.  The question USCIS asked in the Decision was "whether or not the petitioner, by a preponderance of the evidence, has demonstrated that [he] possesses the high level of expertise required."  AR at 3.  After discussing the evidence, it concluded that he had not.  Id. at 4–5.

Donskoy challenges that conclusion.  See generally Compl.  Donskoy argues that USCIS erred in requiring that he receive individual acclaim for winning the Fulbright award, P. Mot. at 11; in requiring that his achievements be met with sustained acclaim, id. at 12; in requiring that the research community react positively toward his articles, id. at 12–13; and in concluding that he had not met the preponderance of the evidence standard, despite evidence of his unique contribution to the field of "crowdinvesting," and in the face of "no substantial counterevidence that would map a subject to prove the contrary," 13–14.  He urges that, because USCIS determined that he met the criteria of 8 C.F.R. 204.5(h)(3) §§ (i), (v), and (vi), he is entitled to relief "[i]n the absence of negative factors."  Id. at 15–16.

Donskoy is incorrect.  USCIS did not rule "based on an improper understanding of the law."  See Kazarian, 596 F.3d at 1118.  Nor did it fail to consider "the relevant factors" or to "articulate a rational connection between the facts found and the choice made.'"  See National

Ass'n of Home Builders v. Norton, 340 F.3d at 841.  USCIS appropriately discussed the evidence accompanying Donskoy's petition and explained why, collectively, it did not demonstrate that Donskoy had "'risen to the very top of [his] field of endeavor.'"  AR at 4 (quoting Matter of Price, 20 I&N at 955).

### A. Fulbright Award

USCIS explained that although Donskoy was selected to be a Fulbright scholar, and "the Fulbright program is prestigious," what matters for the purpose of the visa classification is whether the award brought Donskoy individual acclaim.  AR at 4.  That is consistent with the regulations.  See 8 C.F.R. § 204.5(h)(3) (requiring "evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise.") (emphasis added).  While prestigious, the Fulbright award is not the equivalent of the Nobel Prize, which is alone sufficient to satisfy 8 C.F.R. § 204.5(h)(3).  See Kazarian, 596 F.3d at 1119 ("Nobel Prize is the quintessential example" of such an award).

Donskoy did not submit any evidence that he himself received any publicity for winning the Fulbright award, or that he stands out among the thousands of recipients of the award each year.  Rather, the information he submitted states that more than 230,000 total foreign individuals received Fulbright Grants between 1946 and 2014, AR at 33, with a "steady increase[] since the 1940s," AR at 27.  The same award was apparently given to 28 individuals from Russia in 2012, when Donskoy received his award.  AR at 152.  Particularly given the number of recipients, USCIS was not wrong to focus on the lack of evidence of individual acclaim.  As in Noroozi, where the petitioner was ranked 284th in the world in table tennis and conceded that "a finding in his favor . . . would effectively oblige [USCIS] to find that the 283 higher-ranked table tennis players in the world (to the extent they are not American citizens) would also satisfy the standards for an extraordinary ability visa," see 905 F. Supp. 2d at 545–46, it cannot be that every foreign Fulbright recipient is entitled to an extraordinary ability visa.  See also Bodhankar, 2020 WL 777211, at *5 ("The organizations of which Plaintiff is a member admit such a high number of members that it is not consistent with the proposition that membership is limited only to those who have reach the very top of their field.").

Donskoy argues that the Fulbright "is normally given to natural persons and not to a group," and that USCIS's conclusion as to the award "lacks adequately opposing information." See P. Mot. at 11. There is no indication that USCIS did not understand that the Fulbright is an individual award. It explained that Donskoy needed, and failed, to demonstrate individual acclaim, which "would include widespread publicizing of his receipt of the funding or the work he was to complete under its umbrella." AR at 4. This is a separate concept entirely, and appropriate given the regulations. See 8 C.F.R. § 204.5(h)(3) (requiring "evidence that the alien has sustained national or international acclaim") (emphasis added).

Moreover, to be clear, USCIS need not present "opposing information." See Mot. at 11. It need not identify "substantial counterevidence that would map a subject to prove the contrary." See id. at 13–14. Donskoy's repeated assertions that USCIS was required to submit its own evidence, see, e.g., P. Reply at 12 ("The Defendant's assertion . . . [that] 'the agency was not required to identify specific contrary evidence' . . . is not grounded. . . ."); id. at 15 ("The agency failed to generate such opposing information that would prevail the probative value of the submitted evidence."), are unpersuasive. USCIS's task was to weigh the evidence Donskoy presented and determine whether Donskoy met his burden. See Kazarian, 596 F.3d at 1119–20 ("If [an alien] has submitted the requisite evidence, USCIS determines whether the evidence demonstrates [extraordinary ability]"); Noroozi, 905 F. Supp. 2d at 539 ("In the final merits stage, adjudicators consider the totality of the evidence to determine whether the petitioner has, by a preponderance of the evidence, established [extraordinary ability]"); Manual (explaining process by which USCIS evaluates evidence to determine whether petitioner has demonstrated eligibility).

### B. Fulbright Membership

USCIS also appropriately considered the evidence of Donskoy's Fulbright Association membership. See AR at 4; Manual ("Notably, the evidence evaluated at [the first] step is also reviewed in the next step where the officer must determine whether the person is one of that small percentage who has risen to the very top of the field of endeavor, and that he or she has sustained national or international acclaim."). USCIS concluded, as it did at step one, that Donskoy's Fulbright membership did not enhance his eligibility because membership is not limited to

recipients of the Fulbright award and indeed seems to be open to anyone who "support[s] the mission of the Association." AR at 4. While Donskoy's membership presumably came about as a result of his receipt of the Fulbright award, USCIS was not wrong to conclude that membership does not demonstrate the requisite level of achievement or sustained acclaim to establish extraordinary ability.

### C. Commercialization of Work

USCIS next noted that "petitioner provided evidence showing that some of his work has been commercialized in the crowdfunding area," but commented that "no evidence was provided to suggest that he has drawn particular attention as a result of this capitalization." AR at 4. Donskoy disputes this, arguing that he made a unique contribution to the field, because "there are many crowdinvesting platforms employed the proposed baseline design around the globe, which nowadays facilitate circulation of large amounts of investments." P. Mot. at 14 (citing AR at 154). But Donskoy cites to a single page of his petition in which he himself asserted that, in the year 2000, when he was 17, he did a 3-month research study, "published in the journal of Regional Statistics issues by the Nizhny Novgorod Region Statistics Committee for educating authorities," and that he proposed an idea "which is now widely known as crowd-funding." AR at 154. He continues, "The crowd-investing later became popular, and a lot of crowd-investing platforms was launched over the world." Id. (listing platforms). Even accepting this claim at face value, it supports the notion that Donskoy's idea was a success but not that he received any particular acclaim or even credit for it.

Donskoy also points to an "expert report" that he contends "corroborat[es] the major significance of the scholarly contribution." P. Mot. at 14. That expert report is a two-page letter from an individual named Dmitry Zebrin, an Associate Vice President or Deutsche Bank Technology Centre in Moscow who provides little information about what makes him an expert in this area. See AR at 82 ("I work in a subsidiary of a global bank and oversee the bank software for the investment banking services, and also review financial models."). Zebrin states that he met Donskoy "[a]bout a decade ago," when Donskoy shared his research with him. Id. Zebrin concludes, "After reviewing the available information, I have determined that, for the year of

10

2000, Sergey's crowdinvesting solution was novel and original." Id. at 83.[7] He then states that "many crowdinvesting entities, with millions of customers, have implemented the model proposed by Sergey," lists a number of platforms, and states that "[b]ecause crowdinvesting platforms benefit millions of customers and because they drive entrepreneurship and facilitate innovation, the Sergey's contribution has substantially influenced financial markets, as well as financial education." Id. He concludes that Donskoy's contribution "is remarkable and of major significance." Id. And he attaches to his report a 2013 patent that, he says, "at some degree restated and extended the financial model suggested by [Donskoy]." Id.

But the patent is not Donskoy's—the inventor listed is someone named Judd Hollas from Fayetteville, Arkansas—and does not reference Donskoy. See AR 84–85. Contrary to Donskoy's assertion, see P. Reply at 16, the expert report does not explain how the patent necessarily sprang from Donskoy's work—nor, if it did, how the patent was granted, id. at 82–83. More broadly speaking, even if the expert report accurately characterizes Donskoy's early contributions to the field of crowdinvesting, there is a real absence of evidence that Donskoy achieved "sustained national or international acclaim" for those contributions, or (and the requirement is "and") "that his or her achievements have been recognized." See 8 C.F.R. § 204.5(h)(3). The expert report, while asserting that many entities "have implemented" Donskoy's model, does not assert that such entities—or others—recognized Donskoy's role. See AR at 83. "[I]t is generally expected that an individual whose accomplishments have garnered sustained national or international acclaim would have received recognition for his or her accomplishments well beyond the circle of his personal and professional acquaintances." Mishra v. Richardson, No. 1:20-cv-991 (LMB/TCB), 2021 WL 1566071, at *3 (E.D. Va. Apr. 20, 2021). USCIS appropriately noted the absence of individual acclaim for the commercialization of Donskoy's idea.

### D. Publications

Finally, USCIS noted that Donskoy submitted "evidence that he has authored scholarly

---

[7] Having a novel idea in 2000 is no small thing, but the regulations require "sustained national or international acclaim," 8 C.F.R. § 204.5(h)(3), and so would seem to require continued contributions in the twenty-one years hence.

articles" in academic journals, but commented that "[a]s an academic, publication is expected" and that "[t]here is nothing in the file to suggest that the petitioner's publication record is particularly noteworthy or that it establishes him as one at the peak of his profession." AR at 4. Donskoy had submitted with his petition the article in Regional Statistics from 2000, id. at 106–14, the original research paper from 2000, id. at 201–203, and two articles from 2015, id. at 217–23, 238–43. While Donskoy argues now that "the requirement that articles be considered in light of the research community's reaction is nowhere found in the statute or regulations," P. Mot. at 13, the regulations explicitly require "sustained national or international acclaim" and that the applicant's "achievements have been recognized," see 8 C.F.R. § 204.5(h)(3). USCIS had no evidence before it that the submitted publications garnered Donskoy any acclaim or recognition, or were even cited by other scholars. See Kazarian, 596 F.3d at 1121 ("other authors' citations (or a lack thereof) might be relevant to the final merits determination of whether a petitioner is at the very top of his or her field of endeavor"); Manual ("As part of the final merits determination, the quality of the evidence should also be considered, such as . . . whether the scholarly articles . . . are cited by others in the field."); cf. Bodhankar, 2020 WL 777211, at *5 ("lack of press about Plaintiff is not consistent with national or international acclaim.").[8] "Examination into sustained acclaim is a component of the 'final merits determination' of whether the evidence shows extraordinary ability." Hristov v. Roark, No. 09-cv-2731, 2011 WL 4711885, at *8 (E.D. N.Y. Sept. 30, 2011); see also Rijal, 772 F. Supp. 2d at 1347 ("There is no threshold requirement that the evidence demonstrate . . . acclaim, but ultimately, USCIS must determine whether the evidence demonstrates 'sustained national or international acclaim.'"). USCIS appropriately found that the publications did not demonstrate individual acclaim or significant achievement.

### E.  Conclusion as to Final Merits Determination

Considering all of the evidence in totality, USCIS concluded that Donskoy failed at step two to demonstrate that he meets the requirements for extraordinary ability classification. AR at

---

[8] Donskoy argues that a 2020 USPTO press release about an IP Marketplace Platform is some evidence of "a reaction of the community" to his publications. See P. Reply at 17. But that press release does not mention Donskoy or his writing.

1–5.  The Court cannot conclude that in doing so, USCIS's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  See 5 U.S.C. § 706(2)(A).  "A reasonable person could find . . . that [Donskoy] has not established that he meets the highly restrictive definition of extraordinary ability."  See Bodhankar, 2020 WL 777211, at *5.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Donskoy's motion and GRANTS USCIS's motion.  Donskoy's complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: November 11, 2021



CHARLES R. BREYER
United States District Judge

13